837 A.2d 1118 (2003)
365 N.J. Super. 6
STATE of New Jersey, Plaintiff-Respondent,
v.
Priscilla STAFFORD, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued October 21, 2003.
Decided December 15, 2003.
*1119 Gary A. Kraemer, Sparta, argued the cause for appellant (Daggett, Kraemer, Eliades & Vanderwiele, attorneys; Mr. Kraemer, on the brief).
Andrew A. Fraser, Sparta, argued the cause for respondent (Laddey, Clark & Ryan, attorneys; Mr. Fraser, on the brief.).
Before Judges STERN, LEFELT[1] and LANDAU.
*1120 The opinion of the court was delivered by LANDAU, J.A.D., retired and temporarily assigned on recall.
Defendant Priscilla Stafford appeals from a final order and judgment of the Law Division that, following trial de novo on her appeal from the Sparta Township Municipal Court, found her guilty on separate complaints of violating Sections 11-1.3 and 11-5.3 of the Township's Code Public Health Nuisance Regulations by allowing the feeding of migratory wildfowl on her property. The Law Division judge reduced the fines imposed by the municipal court to $100 on each complaint, but determined that the fines should be deemed as "running concurrent." Thus, a "total fine" of $100 was imposed, together with court costs of $30 and a $2 ACS assessment.
Defendant appeals, raising these arguments:
POINT ONE
SPARTA ORDINANCE 11.1.3 DEFINING NUISANCES IS UNCONSTITUTIONALLY VAGUE, REQUIRING SUMMONS 5209 TO BE DISMISSED.
POINT TWO
THE STATE FAILED TO PROVE THE ELEMENTS OF THE OFFENSES CHARGED BEYOND A REASONABLE DOUBT; ACCORDINGLY THE COMPLAINTS MUST BE DISMISSED.
POINT THREE
THE COURTS BELOW IMPROPERLY ALLOWED INTO EVIDENCE UNDULY PREJUDICIAL TESTIMONY ABOUT OTHER WRONGS IN VIOLATION OF N.J.R.E. 403, 404 and 406.
POINT FOUR
THE SPARTA ORDINANCE PROHIBITING FEEDING MIGRATORY WATERFOWL IS PREEMPTED BY FEDERAL LAW.
Save for holding that conviction of violating § 11-1.3 should be merged with the conviction under § 11-5.3, for reasons set forth below, we find defendant's arguments to be without merit, and affirm.

FACTS AND PROCEDURAL BACKGROUND
Based upon a complaint filed by Emrick Seabold of the Sparta Township Health Department, two summonses were issued out of the Municipal Court of Sparta on February 25, 2002, by its Court Administrator to defendant Priscilla Stafford upon the requisite findings of probable cause. R. 7:2-2(a)(1).
Complaint No. 5208 alleged violation of "Sparta Twsp.Code 11-5.3." The offense is described as "Allows the regular feeding of geese and other migratory waterfowl at the above noted location." (Defendant's address, "49 South Shore Tr.")
Complaint No. 5209 referred to Sparta Township Ordinance 11-1.3, describing the offense as "... allow feeding [of] geese and other migratory waterfowl at above location."
Both complaints asserted that the offenses occurred "on or about" 10:00 a.m., February 25, 2002. During the municipal court trial, it was established that, prior to issuance of the summonses, Mr. Seabold sent two abatement notices to defendant respecting the Board of Health's continued receipt of complaints that she or someone at her location was regularly feeding waterfowl in violation of Section 11-5.3 of the Sparta Township Ordinances. Cessation was demanded and defendant was notified that "failure to cease these activities will result in the issuance of a summons *1121 against you." A copy of the applicable health ordinances and the ordinance authorized by N.J.S.A. 40:49-5 was enclosed with the first notice.
We note that the complaint and procedures followed by the municipality are authorized by N.J.S.A. 40:48-2 and N.J.S.A. 40:49-5 (penalty provisions). Thus, criminal standards of proof apply. The Legislature has also authorized local Boards of Health to adopt public health nuisance regulations by ordinance. N.J.S.A. 26:3-64. Such regulations are enforceable by proceedings under the Penalty Enforcement Law, N.J.S.A. 2A:58-10, 11 and 12. The latter proceedings are civil in nature, and subject to proof by a preponderance of the evidence. Guilt in the present matters, which were instituted by criminal-type complaints made under the Sparta Township Code, had to be established beyond a reasonable doubt.
Footnoted below are the relevant sections of the Sparta Township Health Code: 11-1.3, 11-1.4, 11-5.1, 11-5.2 and 11-5.3.[2] During the trial, the State presented testimony that both the defendant and a male house guest had been observed feeding migratory geese and mallards on and from her property. Most but not all of the observed feeding incidents involved defendant's house guest. Further support that feed was being provided for migratory waterfowl on and from defendant's location was provided by testimony that large numbers of geese would often flock to the area of defendant's yard abutting upper Lake Mohawk in numbers sufficient to denude the lawn of grass, and that food was observed on the ground in that area. Testimony also indicated that there was feeding from defendant's dock area. Residents of neighboring properties said that they and particularly their small children, were subjected to contact with fecal matter and the unwanted aggressive presence of Canadian geese attracted to their own properties by *1122 the food left in defendant's yard and by hand-feeding on and from her property.
Defendant rested without presenting conflicting testimony or other evidence.
Based upon the record before him on the trial de novo, the Law Division judge found defendant guilty of violating both Complaint No. 5209, and Complaint No. 5208. He rejected defendant's argument that there was no direct testimony that she fed any wildfowl at 10:00 a.m. on February 25, but merely that a large flock was observed on her property on that time.
The judge stated:
But this was not a circumstance that was created in a vacuum. The testimony reveals that the enforcement officer had had prior contact with Ms. Stafford and as noted by Mr. Allen in his testimony and by the other individuals who live in the area, that this was a circumstance that had become particularly severe at that point in time.
Now, the complaint describes an incident___a violation, rather, occurring on or about February 25. I don't believe that the State in prosecuting complaints of this nature is bound to a particular point in time because the condition that's complained about did not occur at that particular moment in time. As the witnesses described it, this occurred over a period of time, immediately preceding the issuance of the complaint on February 25. It was an ongoing condition. And in effect, that's what most nuisances are, they're ongoing conditions.
The judge recognized that, in any event, the testimony respecting the repeated feeding of geese and other wildfowl during the period preceding February 25, and the repeated attraction of geese to defendant's property associated with such feeding provided persuasive circumstantial evidence of violation on the morning of February 25, even if Mrs. Stafford was not actually observed to be feeding migratory birds on that morning. Further, the court took note that § 11-5.3, violation of which was charged in Complaint No. 5208, provides that "no person shall systematically feed, cause to be fed or provide a food for migratory waterfowl ..." He found the evidence sufficient to believe that defendant played a role in causing the birds to be fed and in providing food for their sustenance.
During both trials, the defense argued, as it does on appeal, that the specific charges made in each of the complaints were essentially duplicative and that there could be no more than one violation. While the court determined not to merge the two offenses, he nonetheless determined, without objection from the State, to "run the sentences concurrent."

DISCUSSION
Upon consideration of the record, which was never factually contested during the trial de novo, we are satisfied that the Law Division judge correctly determined that there was sufficient evidence to sustain the convictions beyond a reasonable doubt.
Nonetheless, although the present case involves municipal ordinance violations and not convictions of statutory offenses, the practice mandated in the New Jersey Criminal Code by N.J.S.A. 2C:1-8a(4) should also be followed in cases such as this. See N.J.S.A. 2C:1-14a, 1-14(h). As the State has reasonably argued on appeal, the conduct defined by § 11-5.3 resulted in the nuisance that is barred under § 11-1.4. However, the same practices also constituted a nuisance as defined in § 11-5.1.
Under N.J.S.A. 2C:1-8a, "when the same conduct of a defendant may establish the commission of more than offense, the *1123 defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if: ... (4) the offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct." Further, "[a] determination barring multiple convictions shall be made by the court after verdict or finding of guilt." Ibid.
We adopt that statutory expression as an appropriate statement of the policy to be applied in the instant matter involving violation of a municipal code. Accordingly, we hold that defendant's conviction under Complaint No. 5209 (§ 11-1.3) shall be deemed merged into the conviction under Complaint No. 5208, which, pursuant to the public health nuisance and purpose identified in § 11-5.1, charged violation of § 11-5.3.
The sections quoted in Footnote 1, supra, illustrate that the Township has determined that the presence of large numbers of migratory waterfowl on and around its lakes causes a public health nuisance. Section 11.5 of the Municipal Code incorporates a purpose to prevent conduct that may attract such migratory waterfowl, defined as including "geese, brant, puddle, diving and sea ducks and any other waterfowl that generally follow a seasonal migration pattern." Sections 11-5.1, 11-5.2. The § 11-5.3 provision that, "no person shall systematically feed, cause to be fed or provide a food for migratory waterfowl in the Township on lands either publicly or privately owned," effectuates the regulatory purpose to address an identified nuisance.
We have considered carefully defendant's argument that defendant's conviction must be declared void because the ordinance under which she was convicted is unconstitutionally vague on its face. Defendant's argument is largely premised upon our decision in Guidi v. City of Atl. City, 286 N.J.Super. 243, 668 A.2d 1098 (App.Div.1996). Recently, we reinforced that decision in State v. Golin, 363 N.J.Super. 474, 833 A.2d 660 (App.Div.2003). Unlike the municipal code in those cases, however, the Sparta Township Code provisions have unambiguously declared and defined the nuisance addressed in connection with the feeding and provision of food for migratory wildfowl such as Canadian geese, and have clearly declared a public health purpose associated therewith.
The vagueness doctrine is premised on the notion that the law must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222, 227 (1972); Chez Sez VIII, Inc. v. Poritz, 297 N.J.Super. 331, 351, 688 A.2d 119 (App.Div.1997), certif. denied, 149 N.J. 409, 694 A.2d 194 (1997), and certif. denied, 522 U.S. 932, 118 S.Ct. 337, 139 L.Ed.2d 262 (1997). "Statutes need not be meticulous in specificity, but should be `afforded flexibility and reasonable breath,' given the nature of the problem and the wide range of human conduct." Chez Sez VIII, 297 N.J.Super. at 351, 688 A.2d 119. "In determining vagueness, a common sense approach is appropriate in construing the enactment in terms of the persons who may be subject to it, and in context with its intended purpose." Ibid.
We find no facial constitutional violation under the vagueness doctrine, even under the strict construction mandated by State, Township of Pennsauken v. Schad, 160 N.J. 156, 171, 733 A.2d 1159 (1999) and Guidi, supra. Further, given the unambiguous written notices provided to defendant, enforcement of the municipal code provisions amply survives an as applied challenge.
*1124 We have considered defendant's argument that no evidence linked her to causation of the feeding or provision of food, or to "systematically" feeding wildfowl, and her associated argument that to merely "allow" such feeding, as charged in the complaints, does not constitute a violation of the nuisance ordinance. We reject those contentions.
Here, the uncontested evidence, both direct and circumstantial, showed multiple instances of migratory wildfowl feedings at and from defendant's property, sometimes by hand and sometimes by virtue of food being left on her property, to the extent that such birds regularly responded there in flocks, resulting in fecal deposits into the lake and along its shoreline, and in adverse health and safety consequences to neighboring properties.
"Systematic," an operative word used in § 11-5.3, is defined in the Webster's II New Riverside Dictionary (Houghton Mifflin 1994) as "purposefully regular." "Allow," the word employed in the complaints respecting feeding, is defined in Black's Law Dictionary, 6th Ed., 1990, as including, "to sanction, either directly or indirectly" and "to acquiesce in." Synonyms provided in Burton's Legal Thesaurus, MacMillan, 1980, include, "approve," "empower," "enable," "endorse," "entitle," "give authority," "give leave," "give permission," "license," "permit," "sanction," and "support."
The testimony reliably established numerous observations of direct feeding, and identified defendant's apparently long term house guest as the principal hand-feeder. Defendant was observed only on isolated occasions. However, defendant is a full-time resident in the property at and from which the feedings emanated, and upon which food was observed to have been placed for indirect feedings. Two official notices from the Health Department made her aware of the prohibited conduct and its consequences. It was reasonably inferred, therefore, that such repetitive open and notorious conduct occurring after receipt of the notices could not have continued absent defendant's knowledge and her having "allowed," i.e., sanctioned and permitted, the regular and purposeful feeding observed by her neighbors. Thus, defendant's involvement in causation was reasonably found.
We find no merit to defendant's attempt to limit the court's consideration of proof only to events occurring at 10:00 a.m. on February 25, 2002. Each complaint plainly states, "on or about" that time and date, and each charged the very nuisance which defendant had been ordered to abate. There could have been no reasonable confusion as to the offense against which defendant would have to defend. Judge Conforti aptly observed, "... that's what most nuisances are, they're ongoing conditions." Moreover, as the merged conviction is of the § 11-5.3 complaint of "systematic" conduct, proof of multiple events was appropriate.
Finally, we reject defendant's contention that the Sparta Migratory Wildfowl Ordinances are preempted by 16 U.S.C.A. 4401(a)(14) and (b)(1-3), and by Executive Order No. 13186 (66 Fed.Reg. 3853) dated January 10, 2001, adopted pursuant to 16 U.S.C.A. 701.
In deciding whether a state law is preempted under the Supremacy Clause by federal law, a court must begin with the presumption that Congress does not intend to preempt state law. Only if that intent is clear and manifest is there a preemption. Taj Mahal Travel, Inc. v. Delta Airlines, Inc., 164 F.3d 186, 192 (3d Cir.1998).
We have examined both the language and the expressed purposes of the assertedly preemptive Federal Wild Life Protection *1125 statutes and regulation. These give no indication that Congress, expressly or by unequivocal implication, intended to preempt State or municipal public health laws directed at correcting conditions legislatively determined to be detrimental to public health. Although defendant argues that the State did not provide proof of danger to health in Sparta Township, the Township's legislative predicate stands uncontradicted in this case.
Accordingly, we deem the federal preemption argument to be entirely without merit.

CONCLUSION
As modified herein by merger of the offenses, the Law Division judgment is affirmed.
NOTES
[1] Judge Lefelt did not participate in the argument of this case. He has been added with consent of all counsel.
[2] 11-1.3 Nuisances Defined. The following matters, things, conditions or acts and each of them are hereby declared to be a nuisance and injurious to the health of the inhabitants of this Township:

a. Any matter, thing, condition or act which is or may become detrimental or a menace to the health of the inhabitants of this Township.
b. Any matter, thing, condition or act which is or may become an annoyance, or interfere with the comfort or general well-being of the inhabitants of this Township.
c. Pollution, or existence of a condition or conditions which cause or threatens pollution, of any waters in this Township in such manner as to cause or threaten injury to any of the inhabitants of this Township either in their health, comfort or property.
d. The escape into the open air from any stack, vent, chimney or any entrance to the open air, or from any fire into the open air of such quantities of smoke, fly, ash, dust, fumes, vapors, mists, or gases as to cause injury, detriment, or annoyance to the inhabitants of this Township or endanger their comfort, repose, health or safety.
11-1.4 No person shall commit, maintain or allow any nuisance as defined in subsection 11-1.3.
11-5 FEEDING OF MIGRATORY WATERFOWL.
11.5.1 Purpose. It has been determined that the presence of large numbers of migratory waterfowl on and around ponds and lakes in the Township causes a public health nuisance in and around said ponds and lakes, including the surrounding beaches and properties, which is detrimental to the health and general welfare of the public. The purpose of this section is to prevent such conduct that may attract such migratory waterfowl to properties in the Township.
11-5.2 Definitions. Migratory waterfowl shall include those non-domesticated species of birds commonly known as geese, brant, puddle, diving and sea ducks and any other waterfowl that generally follow a seasonal migration pattern.
11-5.3 Feeding of Migratory Waterfowl Prohibited. No person shall systematically feed, cause to be fed or provide a food for migratory waterfowl in the Township on lands either publicly or privately owned.