2 A.3d 436 (2010)
415 N.J. Super. 455
STATE of New Jersey, Plaintiff-Respondent,
v.
Ahmed BADR, Defendant-Appellant.
No. A-1975-08T4.
Superior Court of New Jersey, Appellate Division.
Argued November 12, 2009.
Decided August 5, 2010.
*438 John DeNoia, Woodbridge, argued the cause for appellant.
Simon Louis Rosenbach, Assistant Middlesex County Prosecutor, argued the cause for respondent (Bruce J. Kaplan, Middlesex County Prosecutor, attorney; Mr. Rosenbach, of counsel and on the brief).
Susan J. Dougherty, Deputy Attorney General, argued the cause for amicus curiae New Jersey Department of Health and Senior Services (Anne Milgram, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Ms. Dougherty, on the brief).
Before Judges FISHER, SAPP-PETERSON and ESPINOSA.
The opinion of the court was delivered by
ESPINOSA, J.S.C. (temporarily assigned).
Defendant owns a coffee shop and hookah bar, "Sugar Nights," in Woodbridge. It is undisputed that his patrons smoke substances made of herbs and fruit, and not tobacco, in the hookahs. He appeals from his convictions arising from four summonses that charged him with violations of the New Jersey Smoke-Free Air Act (the Act), N.J.S.A. 26:3D-55 to -64, arguing that the definition of smoking in the statute is impermissibly overbroad or vague and that the selective enforcement of the statute deprived him of his right to equal protection under the New Jersey Constitution. We find no constitutional flaw in the statute or its application to defendant but reverse in part because the evidence was insufficient to support a conviction for the first violation.
Vincent Ciuffo, the Principal Health Inspector for the Township of Woodbridge, testified that in late November 2006, defendant came into his office and stated that he wanted to open a combination hookah *439 bar and coffee shop. Ciuffo described a hookah bar as follows:
A Hookah Bar is a place of business where they will have the communal hookahs for people to sit around and share pipefuls of either tobacco or an herb or a dried fruit or a combination of those. It's a practice from the [Middle East] which is now very popular in, particularly in college towns. It's a water pipe which is, usually sits on the floor. And more than one person can actually share the water pipe. They have their own individual tubes with their own individual mouthpieces.
He stated further that the hookahs emit smoke. Ciuffo told defendant that in April 2006, the Smoke-Free Air Act became effective and prohibited smoking inside establishments, including food establishments. He also advised defendant that he did not fall within any of the exceptions. He suggested that defendant contact the State for further clarification. Ciuffo did not hear from defendant again until January 2008, when he stated that he was ready to open the coffee shop without the hookah bar. Defendant signed off on all the inspection and other necessary forms that were required by the Health Department. After defendant opened his business, Ciuffo received reports that there was smoking in the establishment.
On the evening of February 5, 2008, Ciuffo went to defendant's shop at the direction of the Chief Health Inspector to determine if hookahs were being used. He saw two tables of customers using hookahs. Defendant was not present. Ciuffo spoke to the manager, who reached defendant by telephone. Ciuffo advised him that a summons would be issued for the violation. Defendant argued that he could have a hookah bar, that there were others in existence and he did not see any reason why he could not have one. The summons issued on this date stated that defendant committed the following offense: "As owner of Sugar Nights, 215A Avenel, did operate an illegal hookah bar in violation of [N.J.S.A.] 26:3D-55."
Ciuffo returned to defendant's shop on February 13, 2008. He observed two women smoking a hookah. Smoke was coming out of the hookah; its odor appeared to be a combination of fruit and incense. Ciuffo walked outside with defendant so that they could speak outside the presence of the customers. Defendant stated that the woman was a friend of his visiting from Egypt and that she had to smoke the hookah. Ciuffo again reminded him of the law prohibiting smoking and issued a summons that identified the offense as the illegal operation of a hookah bar in violation of N.J.S.A. 26:3D-55.
On February 21, 2008, Ciuffo returned during the day and posted a cease and desist order on the door. He returned the following evening and observed hookahs actively in use at several tables inside the shop. Ciuffo issued a third summons, which alleged that defendant "as operator of Sugar Nights, and after previous summonses, operated a hookah bar" in violation of N.J.S.A. 26:3D-55.
On March 18, 2008, Ciuffo visited defendant's business and again observed hookahs in use. He issued a fourth summons for the operation of a hookah bar.
Ciuffo testified that on each occasion that he visited defendant's business at night, he observed smoke coming out of the hookahs, all of which were located indoors. He did not smell any tobacco smoke on any of these occasions.
Defendant's wife[1] produced the hookah bar's menu, which listed the flavors and *440 prices for the substances smoked, all of which were nicotine-free. She testified that there was no tobacco in any of the products used at their business and that they did not permit smoking of cigarettes or any tobacco on the premises. She admitted that the patrons inhale smoke from the hookah and blow out the smoke, and that the hookah emits smoke when in use.
The municipal court found defendant guilty of violating the Act on the four occasions when summonses were issued: February 5, 13 and 22, 2008 and March 18, 2008. The court imposed a fine of $250 plus court costs for each of the offenses committed in February and a fine of $500 plus court costs for the March 18 offense. Defendant appealed to the Law Division. The trial court convicted defendant on each of the violations and imposed the same sentences as had been imposed in municipal court. Further enforcement was stayed pending the outcome of this appeal.
In this appeal, defendant presents the following issues for our consideration:
POINT I
THE DEFINITION OF SMOKING IN N.J.S.A. 26:3D-56 ET SEQ. IS OVERBROAD AND VAGUE.
POINT II
THE DEFENDANT IS DENIED EQUAL PROTECTION BY VIRTUE OF THE MANNER IN WHICH ENFORCEMENT OF N.J.S.A. 26:3D-55 ET.SEQ. IS DELEGATED.
After careful review of the record, briefs and arguments of counsel, we are satisfied that these arguments lack merit.
The Legislature set forth explicit findings to declare its purpose in establishing the anti-smoking prohibition:
[T]obacco is the leading cause of preventable disease and death in the State and the nation, and tobacco smoke constitutes a substantial health hazard to the nonsmoking majority of the public; the separation of smoking and nonsmoking areas in indoor public places and workplaces does not eliminate the hazard to nonsmokers if these areas share a common ventilation system; and, therefore, subject to certain specified exceptions, it is clearly in the public interest to prohibit smoking in all enclosed indoor places of public access and workplaces.
[N.J.S.A. 26:3D-56[2].]
The means for enforcement of the ban against smoking in indoor public places is set forth in N.J.S.A. 26:3D-62(b), which provides that, upon written complaint or reasonable suspicion of a violation, the local board of health:
shall, by written notification, advise the person having control of the place accordingly and order appropriate action to be taken. A person receiving that notice who fails or refuses to comply with the order is subject to a fine of not less than $250 for the first offense, $500 for the second offense and $1,000 for each subsequent offense. In addition to the penalty provided herein, the court may order immediate compliance with the provisions of this act.
"Smoking" is defined in the Act (prior to amendment effective July 10, 2010) as:
the burning of, inhaling from, exhaling the smoke from, or the possession of *441 a lighted cigar, cigarette, pipe or any other matter or substance which contains tobacco or any other matter that can be smoked.

[N.J.S.A. 26:3D-57 (emphasis added).]
The Legislature provided exemptions for tobacco retail establishments, cigar bars and lounges, tobacco manufacturers and distributors, private homes, and casinos, which defendant agrees are not applicable here. See N.J.S.A. 26:3D-59.
In the amendment of the Act effective July 10, 2010, the Legislature expanded the definition of "smoking" to include "the inhaling or exhaling of smoke or vapor from an electronic smoking device." N.J.S.A. 26:3D-57 (effective July 10, 2010). Its findings and declaration related to that amendment were stated simply:
Electronic smoking devices have not been approved as to safety and efficacy by the federal Food and Drug Administration, and their use may pose a health risk to persons exposed to their smoke or vapor because of a known irritant contained therein and other substances that may, upon evaluation by that agency, be identified as potentially toxic to those inhaling the smoke or vapor[.]
[N.J.S.A. 26:3D-56(c) (effective July 10, 2010).]
The legislative declaration in the amended statute appears to focus upon the danger of tobacco, stating, "[I]t is clearly in the public interest to prohibit the smoking of tobacco products and the use of electronic smoking devices in all enclosed indoor places of public access and workplaces." N.J.S.A. 26:3D-56(d). However, the Legislature did not limit the definition of "smoking" to tobacco products. The definition remains "the burning of, inhaling from, exhaling the smoke from, or the possession of a lighted cigar, cigarette, pipe or any other matter or substance which contains tobacco or any other matter that can be smoked, or the inhaling or exhaling of smoke or vapor from an electronic smoking device." N.J.S.A. 26:3D-57 (effective July 10, 2010) (emphasis added).

I
Defendant does not dispute the authority of the Legislature to prohibit the smoking of tobacco in indoor public places and workplaces as a valid exercise of its police power. He argues that because the definition of "smoking" contained in the statute includes "any other matter that can be smoked," the statute is both overbroad and vague, contrary to Article I, Paragraph 1 of the New Jersey Constitution.
Our review is informed by the principle that a presumption of validity attaches to every statute. State v. Muhammad, 145 N.J. 23, 41, 678 A.2d 164 (1996). The party who challenges the constitutionality of a statute bears the burden of establishing its unconstitutionality. State v. One 1990 Honda Accord, 154 N.J. 373, 377, 712 A.2d 1148 (1998); State v. Jones, 346 N.J.Super. 391, 406, 788 A.2d 303 (App.Div.), certif. denied, 172 N.J. 181, 796 A.2d 898 (2002). The presumption of validity is "particularly daunting when a statute attempts to protect the public health, safety, or welfare." In re C.V.S. Pharmacy Wayne, 116 N.J. 490, 497, 561 A.2d 1160 (1989), cert. denied, 493 U.S. 1045, 110 S.Ct. 841, 107 L.Ed.2d 836 (1990). Such legislation has been consistently sustained if it "is not arbitrary, capricious, or unreasonable, and the means selected bear a rational relationship to the legislative objective." Ibid. (quoting Brown v. City of Newark, 113 N.J. 565, 572, 552 A.2d 125 (1989)); see also Singer v. Twp. of Princeton, 373 N.J.Super. 10, 20, 860 A.2d 475 (App.Div.2004). Our Supreme Court has stated the principle this way: "any act of the Legislature will not be ruled void unless *442 its repugnancy to the Constitution is clear beyond a reasonable doubt." Muhammad, supra, 145 N.J. at 41, 678 A.2d 164. As a result, even where a statute's constitutionality is "fairly debatable, courts will uphold" the law. Newark Superior Officers Ass'n v. City of Newark, 98 N.J. 212, 227, 486 A.2d 305 (1985); see Muhammad, supra, 145 N.J. at 41, 678 A.2d 164. We are obligated to construe a challenged statute to avoid constitutional defects if the statute is "`reasonably susceptible' of such construction." County of Warren v. State, 409 N.J.Super. 495, 506, 978 A.2d 312 (App.Div.2009), certif. denied, 201 N.J. 153, 988 A.2d 1176, cert. denied, ___ U.S. ___, 130 S.Ct. 3508, ___ L.Ed.2d ___ (2010).
The gist of defendant's overbreadth argument is that the net of conduct prohibited reaches farther than the stated target of the statute, the danger posed by tobacco smoke. This argument rests upon a misapplication of the overbreadth doctrine.
First of all, we do not read legislative intent so narrowly as to confine the legitimate reach of an enactment to the formal declaration of its intent. Our "main objective is to further the Legislature's intent." In re Tenure Hearing of Young, 202 N.J. 50, 63, 995 A.2d 826 (2010). "The clearest indication of a statute's meaning is its plain language." G.S. v. Dep't of Human Servs., 157 N.J. 161, 172, 723 A.2d 612 (1999). There is a strong presumption "`that the legislative purpose is expressed by the ordinary meaning of the words used.'" Ardestani v. INS, 502 U.S. 129, 136, 112 S.Ct. 515, 520, 116 L.Ed.2d 496, 505 (1991). Therefore, we turn first to the plain language of the statute, giving "words their ordinary meaning absent any direction from the Legislature to the contrary. If the plain language leads to a clear and unambiguous result, then [the] interpretive process is over." Young, supra, 202 N.J. at 63, 995 A.2d 826 (internal citations omitted, alteration in original). When the plain language of a statute is susceptible to multiple interpretations, we may consider extrinsic tools to determine the Legislature's likely intent. D'Annunzio v. Prudential Ins. Co. of Am., 192 N.J. 110, 120, 927 A.2d 113 (2007). However, "where the text of a statute is unambiguous, the statute should be enforced as written and `[o]nly the most extraordinary showing of contrary intentions in the legislative history will justify a departure from that language.'" In re Phila. Newspapers, LLC, 599 F.3d 298, 314 (3d Cir.2010) (quoting United States v. Albertini, 472 U.S. 675, 680, 105 S.Ct. 2897, 2902, 86 L.Ed.2d 536, 542 (1985)).
We also may consider the statute "in light of other statutory provisions and the nature of the subject matter." G.S., supra, 157 N.J. at 172, 723 A.2d 612. To the extent the Legislature has demonstrated the scope of its intent in proscribing smoking, it has not expressly limited its concern to tobacco. As noted, the amendment of the Act included "the inhaling or exhaling of smoke or vapor from an electronic smoking device." N.J.S.A. 26:3D-57 (effective July 10, 2010) (emphasis added). See also N.J.S.A. 2A:170-51.6(a)(3) (prohibiting the sale of flavored cigarettes containing "any other matter or substance which can be smoked").
In addition, we generally give substantial deference to how an agency interprets a statute that it is empowered to enforce. See Young, supra, 202 N.J. at 63-64, 995 A.2d 826; Smith v. Dir., Div. of Taxation, 108 N.J. 19, 25, 527 A.2d 843 (1987). Administrative regulations relevant to the enforcement of the Smoke-Free Air Act reflect an expansive view of the Legislature's purpose in limiting smoking. See, e.g., N.J.A.C. 8:6-2.1 (statute is not to be construed to limit operator of *443 establishment from establishing restrictions greater than those provided by Act); N.J.A.C. 8:6-2.2(a) (smoking prohibited in workplace even at times when establishment is not generally accessible to public); and N.J.A.C. 8:6-2.2(b) (smoking prohibited in establishment even when establishment is seasonally "not structurally enclosed").
Here, the ordinary meaning of the plain words of the statute are clear. Smoking of any matter that can be smoked is prohibited in designated places. The declaration in the amended statute that it is in the public interest to prohibit the smoking of tobacco products and the use of electronic smoking devices in such places does not constitute the "extraordinary showing of contrary intentions" to justify a departure from that language. Moreover, both administrative regulations and other statutory provisions support the conclusion that the Legislature intended the prohibition to be read broadly, consistent with the language used in the statute.
More important, overbreadth is not measured by whether the scope of the prohibition exceeds the stated purpose of the legislation, but rather, the extent to which it intrudes upon constitutionally protected conduct. The Supreme Court has provided guidance on the proper approach to a dual challenge such as that asserted by defendant here:
In a facial challenge to the overbreadth and vagueness of a law, a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail. The court should then examine the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the challenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.
[Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494-95, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362, 369 (1982)].
See also Town Tobacconist v. Kimmelman, 94 N.J. 85, 98, 462 A.2d 573 (1983). Therefore, our first task here is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct.
The overbreadth concept "involves substantive due process considerations concerning excessive governmental intrusion into protected areas." Karins v. Atl. City, 152 N.J. 532, 544, 706 A.2d 706 (1998) (quoting In re Petition of Soto, 236 N.J.Super. 303, 324, 565 A.2d 1088 (App. Div.), certif. denied, 121 N.J. 608, 583 A.2d 310 (1990), cert. denied, 496 U.S. 937, 110 S.Ct. 3216, 110 L.Ed.2d 664 (1990)). "The evil of an overbroad law is that in proscribing constitutionally protected activity, it may reach farther than is permitted or necessary to fulfill the state's interests." Town Tobacconist, supra, 94 N.J. at 126 n. 21, 462 A.2d 573 (emphasis added). See also United Prop. Owners Ass'n of Belmar v. Borough of Belmar, 343 N.J.Super. 1, 35, 777 A.2d 950 (App.Div.), certif. denied, 170 N.J. 390, 788 A.2d 774 (2001).
Historically, the overbreadth doctrine has been invoked when an enactment impinges upon first amendment rights, as it "emanate[d] from the notion that `[f]irst amendment freedoms need breathing space to survive....'" State v. Lee, 96 N.J. 156, 165, 475 A.2d 31 (1984) (quoting N.A.A.C.P. v. Button, 371 U.S. 415, 433, 83 *444 S.Ct. 328, 338, 9 L.Ed.2d 405, 418 (1963)). Although our review of challenges based upon overbreadth has not been so limited, the question remains whether the challenged "enactment reaches a substantial amount of constitutionally protected conduct." Soto, supra, 236 N.J.Super. at 324, 565 A.2d 1088.
In Singer, supra, 373 N.J.Super. at 25, 860 A.2d 475, we rejected an overbreadth challenge to an ordinance that prohibited feeding wild deer on public and private lands because we found that feeding deer on one's own property is not a fundamental property right. Similarly, in State v. Sharkey, 204 N.J.Super. 192, 201, 497 A.2d 1291 (App.Div.), certif. denied, 102 N.J. 360, 508 A.2d 229 (1985), we found the statute prohibiting the distribution of "look-alike" illicit drugs not overly broad because it did not reach any constitutionally protected conduct. Even when a constitutionally protected right is implicated, the statute will succumb to an overbreadth challenge only if the impact on constitutionally protected conduct is substantial. See Jones, supra, 346 N.J.Super. at 407, 788 A.2d 303 (overbreadth challenge to N.J.S.A. 2C:13-4 rejected because its impact upon the constitutionally protected parent-child relationship was limited).
Defendant identifies the right infringed by the alleged overbreadth in the Act as the right to conduct one's business, the inalienable right to "enjoy life and liberty, of acquiring, possessing and protecting property." N.J. Const. art. I, § 1, ¶ 1. Despite defendant's characterization, the actual impact of the Act upon him is far more limited. The Act merely denies him the option of permitting smoking within his business establishment.
In Greenberg v. Kimmelman, 99 N.J. 552, 494 A.2d 294 (1985), the wife of a judge claimed the conflicts of interest law infringed upon her right to employment because it prevented her from being employed by a casino. Our Supreme Court recognized the right to employment opportunity as a fourteenth amendment liberty interest that is protected against arbitrary governmental interference and that is also protected under the New Jersey Constitution. Id. at 570-71, 494 A.2d 294. However, the Court noted, "The right to a particular job, unlike the right to work in general, has never been regarded as fundamental." Id. at 573, 494 A.2d 294 (emphasis added). Accordingly, the Court rejected plaintiff's claim that plaintiff's desire to work in a casino implicated a fundamental right.
Here, too, defendant's desire to operate a hookah bar does not implicate a fundamental right. The statute does not restrict constitutionally protected conduct, such as his general right to own and conduct a business, but only his right to conduct a business with smoking on the premises. Like the right to a particular job, the right to operate a particular kind of business, one that allows smoking on the premises, is not constitutionally protected. See ibid. Therefore, defendant's overbreadth challenge fails. See Hoffman Estates, supra, 455 U.S. at 494-95, 102 S.Ct. at 1191, 71 L.Ed.2d at 369.

II
We next turn to defendant's claim that the statute is unconstitutionally vague. Following the approach provided by the Supreme Court in Hoffman Estates, and finding no intrusion upon constitutionally protected conduct, we examine the application of the statute to defendant's conduct. If his conduct is "clearly proscribed [he] cannot complain of the vagueness of the law as applied to the conduct of others." Hoffman Estates, supra, 455 U.S. at 495, 102 S.Ct. at 1191, 71 L.Ed.2d at 369.
*445 Defendant's vagueness challenge targets the phrase "or any other matter that can be smoked." However, the existence of a "catchall" provision does not automatically render the regulation void on vagueness grounds. See Karins, supra, 152 N.J. at 542, 706 A.2d 706. In this case, the Legislature has clearly proscribed conduct in a way in which both enforcement officers and the public can understand. If a substance produces "smoke" and "can be smoked[,]" it is not permitted to be smoked in an indoor public establishment or workplace. N.J.S.A. 26:3D-57.
The purpose of the vagueness doctrine is to give "fair warning" to a subject that his conduct is prohibited by the enactment. See Colten v. Kentucky, 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584, 590 (1972); State v. Walker, 385 N.J.Super. 388, 403, 897 A.2d 411 (App.Div.), certif. denied, 187 N.J. 83, 899 A.2d 305 (2006). The vagueness doctrine is premised on the notion that the law must "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." Grayned v. City of Rockford, 408 U.S. 104, 108, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222, 227 (1972); State v. Saunders, 302 N.J.Super. 509, 520-21, 695 A.2d 722 (App.Div.), certif. denied, 151 N.J. 470, 700 A.2d 881 (1997). A statute fails to meet that standard if it fails to provide adequate notice to those individuals who are subject to it because it "does not with sufficient clarity prohibit the conduct against which it [is] sought to be enforced." State v. Cameron, 100 N.J. 586, 591, 593, 498 A.2d 1217 (1985); State v. Moran, 408 N.J.Super. 412, 429, 975 A.2d 480 (App.Div.), certif. granted, 200 N.J. 547, 985 A.2d 645 (2009).
The "linguistic analysis" is conducted in "the reality in which the [statutory] provision is to be applied." State v. Warriner, 322 N.J.Super. 401, 408, 731 A.2d 86 (App. Div.1999); Saunders, supra, 302 N.J.Super. at 520-21, 695 A.2d 722. It is expected that a person of ordinary intelligence who is affected by the standard will use common sense and be guided by principles applicable to the context. See San Filippo v. Bongiovanni, 961 F.2d 1125, 1139 (3d Cir.) (evaluating a vagueness challenge to a standard for discharge from public employment), cert. denied, 506 U.S. 908, 113 S.Ct. 305, 121 L.Ed.2d 228 (1992); Chez Sez VIII, Inc. v. Poritz, 297 N.J.Super. 331, 351, 688 A.2d 119 (App.Div.), certif. denied, 149 N.J. 409, 694 A.2d 194, cert. denied, 522 U.S. 932, 118 S.Ct. 337, 139 L.Ed.2d 262 (1997). The Supreme Court observed, "businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action" and "may have the ability to clarify the meaning of the regulation by its own inquiry, or by resort to an administrative process." Hoffman Estates, supra, 455 U.S. at 498, 102 S.Ct. at 1193, 71 L.Ed.2d at 371-72.
Notably, the reality in which the Act is to be applied explicitly affords businesses the opportunity to seek such clarification. The Act provides "fair warning" by requiring prior written notification of prohibited conduct:
[U]pon written complaint or having reason to suspect that an indoor public place or workplace covered by the provisions of this act is or may be in violation of the provisions of this act, [the local board of health] shall, by written notification, advise the person having control of the place accordingly and order appropriate action to be taken. A person receiving that notice who fails or refuses to comply with the order is subject to [a fine and may be ordered by the court to comply immediately with the provisions of the Act.].

*446 [N.J.S.A. 26:3D-62(b) (emphasis added).]
Therefore, by its very terms, no one of common intelligence need guess at this statute's meaning. Before a person is subject to any fine, the enforcing agency must provide written notification that his or her conduct "is or may be" in violation of the act. It is only after receiving that notice and failing to comply with the order that a penalty may be imposed. By restricting the enforcement authority to conduct that is pursued after explicit warning, the statute affords the affected party the opportunity to seek a declaratory judgment regarding the appropriateness of the statute's application to his or her conduct before any sanction is applied.
In addition, in this case, the evidence was unrefuted that, prior to opening his establishment, defendant sought permission to open a hookah bar and was told that the Act prohibited that use. Since he had such actual notice, it naturally follows that defendant had "fair warning" of the prohibited conduct. In finding that an employment regulation prohibiting unbecoming conduct was not unconstitutionally vague, our Supreme Court noted that the employee firefighter knew that the use of racial slurs was prohibited because he had been disciplined less than a year earlier for making such remarks. Karins, supra, 152 N.J. at 544, 706 A.2d 706. Similarly, in State v. Stafford, 365 N.J.Super. 6, 15, 837 A.2d 1118 (App.Div.2003), we rejected an "as applied" challenge where the defendant had been given unambiguous written notices that feeding wildfowl on her property violated municipal code provisions. See also, e.g., United States v. Hartsell, 127 F.3d 343, 350-351 (4th Cir.1997) (discharge permits that contained specific efluent limits provided adequate notice of conduct prohibited by federal law), cert. denied, 523 U.S. 1030, 118 S.Ct. 1321, 140 L.Ed.2d 484 (1998); United States v. Carlson, 87 F.3d 440 (11th Cir.1996) (Analogue Act was not void for vagueness as applied where the defendants had actual notice that possessing precursor chemicals was prohibited), cert. denied, 522 U.S. 895, 118 S.Ct. 238, 139 L.Ed.2d 169 (1997); United States v. Regan, 221 F.Supp.2d 666, 671 (E.D.Va.2002) (vagueness claim rejected as to defendant who had actual notice that passing information involving national security constituted a crime punishable by death).
We therefore conclude that the Act, as applied to defendant's conduct here, was not unconstitutionally vague.

III
We also conclude that the record was insufficient to support a conviction under the Act for the February 5 summons. As we have noted, one of the salient features of the Act is its requirement that no sanction is imposed until the affected party has received written notice that his or her conduct violates the statute and, thereafter, fails to comply with the Act. The record fails to demonstrate that the written notification required by the statute was provided to defendant before the February 5 summons.[3] The summons issued on that date stated, "As owner of Sugar Nights, 215A Avenel, [defendant] did operate an illegal hookah bar in violation of [N.J.S.A.] 26:3D-55." We are satisfied that this constituted sufficient written notification of prohibited conduct to comply with the notice requirement of the Act for *447 the summonses issued on February 13, 22 and March 18. As a result, those convictions are affirmed.

IV
Defendant's argument in Point II of his brief that he was denied equal protection due to selective enforcement of the Act lacks sufficient merit to warrant discussion in a written opinion, R. 2:11-3(e)(2), beyond the following brief comments.
"To prevail on a claim of selective prosecution, the defendant must provide `clear evidence' to overcome the presumption that the prosecutor has not acted unconstitutionally, given the general deference to which prosecutorial decisions are entitled." State v. Ball, 381 N.J.Super. 545, 559, 887 A.2d 174 (App.Div.2005). Defendant presented no evidence at trial to support this claim. Because our jurisdiction "rightly is bounded by the proofs and objections critically explored on the record before the trial court by the parties themselves," State v. Robinson, 200 N.J. 1, 19, 974 A.2d 1057 (2009), this issue is not properly before us.
In summary, the Act is neither unconstitutionally overbroad nor vague as applied to defendant's conduct. In the absence of constitutional infirmity, the question whether the Act should be amended to explicitly include or exclude defendant's conduct is left to the Legislature. Because the proofs fail to show that defendant was given the written notification required by N.J.S.A. 26:3D-62(b) prior to the issuance of the summons on February 5, 2008, that conviction is reversed and the fine and costs imposed are vacated. Defendant's convictions for the remaining offenses are affirmed.[4]
Affirmed in part and reversed in part.
NOTES
[1] The transcript only identifies defendant's wife as Mrs. Badr. She identified herself in the appeal before the Law Division as Naglia (phonetic) Badr.
[2] The statute is quoted as it existed at the time the summonses were issued, prior to the amendment that became effective July 10, 2010.
[3] At sentencing in the municipal court, the prosecutor stated that Ciuffo testified "that there were letters sent out before he even went out there to inspect and issued the first violation." However, the transcript does not contain such testimony and no letters were received in evidence.
[4] The Act provides that a person who violates its provisions is "subject to a fine of not less than $250 for the first offense, $500 for the second offense and $1,000 for each subsequent offense." The court imposed the fine appropriate to a first offense for both the February 13 and 22 offenses, and the fine appropriate to a second offense for the March 18 offense. The State did not appeal from this sentence. After the February 5 conviction is vacated, defendant remains convicted of three offenses. The fine imposed on the February offenses comport with that applicable to a first offense and the fine imposed on the March 18 offense comports with that applicable to a second offense. Since the State did not appeal the sentence imposed, we see no reason to require further adjustment in the sentence.