STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. ARTHUR HUMPHREYS, DEFENDANT-APPELLANT.

Argued May 6 and 19, 1969—Decided July 14, 1969.

408

*Mr. Thomas Menchin,* Assistant Deputy Public Defender, argued the cause for the defendant-appellant (*Mr. Stanley C. Van Ness,* Public Defender, attorney; *Mr. Thomas Menchin* on the brief).

*Mr. Edward J. Butrym,* Assistant Prosecutor, argued the cause for the plaintiff-respondent (*Mr. Vincent Panaro,* Mercer County Prosecutor, attorney).

The opinion of the court was delivered by

PROCTOR, J. Defendant Arthur Humphreys, Jr. was convicted of breaking and entering with intent to steal, carrying weapons in an automobile without a permit, and unlawful possession of a narcotic drug. A codefendant, James Thomas, was convicted on the same charges; another codefendant, Roy Goins, was not tried with the other two. Humphreys alone appealed to the Appellate Division, which affirmed. 101 *N. J. Super.* 539 (1968). Because one judge dissented on the weapons charge, this case comes before us as of right.

On November 16, 1966, State Trooper Thomas Carr was at an observation point on the twelfth floor of the State Labor and Industry Building in Trenton, viewing the parking lot with the aid of binoculars. At about 10:30 A.M. an automobile driven by Goins entered the lot and parked. Humphreys was sitting in the passenger side of the front seat, and Thomas was in the rear. Goins left his car and examined a Buick parked nearby. After some delay, he was observed poking what appeared to be a wire coat hanger through the window of the car. The trooper then radioed a patrol car to block the parking lot exit. When another car entered the lot Goins stopped what he was doing, returned to his own car, and started to drive out of the lot when he then was intercepted by the police. An examination of the buick showed scratch marks on the rubber seal between the windows, and the door slightly ajar. When Goins' car was searched, a rolled-up wire coat hanger was discovered underneath the front seat on the passenger side, a loaded pearl-

handled .38-caliber revolver, protruding visibly, was found partly wedged between the cushions of the back seat, and a loaded .22-caliber pistol was found underneath the back seat. Marijuana seeds were discovered in the compartment between the two front seats, and an envelope containing marijuana was found under the floor mat on the driver's side. A search of Humphreys' shirt and jacket pockets produced a small quantity of marijuana.

At the end of the State's case, Humphreys moved for an acquittal of the gun possession charge, based upon a constitutional challenge to be discussed *infra,* which motion was denied. In his defense, Humphreys testified that he had never seen the guns or the coat hanger, had never possessed marijuana, and had no knowledge where Goins went after he left his car in the parking lot. He claimed that Goins had driven into the parking lot that morning in order to urinate.

■ On this appeal, Humphreys has not briefed or argued the question of the validity of his conviction of breaking and entering with intent to steal. *N. J. S. A.* 2*A* :94–1. The record provides ample support for his conviction as an aider and abettor, acting as a lookout for Goins as he attempted to break into and steal a car. *N. J. S. A.* 2*A* :85–14. Defendant challenges, however, his other convictions. Although the dissent in the Appellate Division concerned only the weapons charge, our practice is to permit the defendant to argue his entire case, even though only part of it comes before this court as of right. See *State v. Barnes,* 54 *N. J.* 1, 4 (1969).

■ Concerning the charge of unlawful possession of marijuana, the defendant claims that the quantity of the vegetable matter seized from his pockets was too small to be used, and therefore cannot come within the purview of *N. J. S. A.* 24:18–4. That statute makes it unlawful to "possess * * * any narcotic drug," which under *N. J. S. A.* 24:18–2 includes marijuana. A microscope was used in this case not to determine the *presence* of the substance, but to identify it. So long as qualitatively the substance seized is marijuana,

the statute does not prescribe any minimum amount which must be possessed. And it follows that this Court cannot be asked to specify what quantity of a contraband substance is sufficient to invoke criminal sanctions, so long as the presence of the substance is readily determined. Our own Appellate Division and the majority of courts in the country have reached the same conclusion. *State v. McDonald*, 92 *N. J. Super.* 448 (*App. Div.* 1966); *State v. Young*, 427 *S. W. 2d* 510 (*Mo. Sup. Ct.* 1968); *State v. Dodd*, 28 *Wis. 2d* 643, 137 *N. W. 2d* 465 (1965); *State v. Winters*, 16 *Utah 2d* 139, 396 *P. 2d* 872 (1964); *Duran v. People*, 145 *Colo.* 563, 360 *P. 2d* 132 (1961); *Peachie v. State*, 203 *Md.* 239, 100 *A. 2d* 1 (1953); *contra, State v. Moreno*, 92 *Ariz.* 116, 374 *P. 2d* 872 (1962); *Pelham v. State*, 164 *Tex. Cr. R.* 226, 298 *S. W. 2d* 171 (1957). Line-drawing among varying quantities of marijuana is unrealistic, since the small quantity readily warrants the inference that the defendant possessed a larger usable amount, and it is the possession of the latter amount which is the ultimate triable issue in the case.

With regard to defendant's conviction of unlawful possession of a gun in an automobile, *N. J. S. A.* 2A:151–41,* the trial judge in his instructions to the jury read the following pertinent section of *N. J. S. A.* 2A:151–7: "The presence of a firearm * * * in a vehicle is *presumptive evidence* of possession by all persons occupying the vehicle at the time." (emphasis added). Commenting upon this statute, the judge told the jury:

"This is a factor which you may consider in determining the guilt or innocence of the defendants charged, along with all of the other evidence in the case bearing upon this question. However, you must still be satisfied of the guilt of such defendant beyond a reasonable doubt * * *."

---

* This statute provides: "[A]ny person who carries, holds or possesses in any automobile. * * *

a. A pistol or revolver without first having obtained a permit to carry the same in accordance with the provisions of this chapter * * * is guilty of a high misdemeanor."

Later the judge charged the standard instructions with regard to the "presumption of innocence," and the State's burden of proof beyond a reasonable doubt of all the crimes charged. Nowhere in the charge, however, appears any definition of the concept "possession."

Defendant argues that *N. J. S. A.* 2A :151–7, which was read to the jury, is unconstitutional. His argument raises two basic questions: (1) Does the statute create an inference of one fact from another which has so little basis in common experience that it must be held to be unconstitutionally arbitrary? (2) even if on the facts of this case such an inference might not be arbitrary, does the reading of the statute which describes "presumptive evidence" of possession unduly prejudice the defendant by removing the burden of proof of one element of the crime from the State, or lowering the State's burden of persuasion beyond a reasonable doubt?

We have recently had occasion to discuss the proper role of an inference in *State v. DiRienzo,* 53 *N. J.* 360 (1969). That case concerned a constitutional challenge to *N. J. S. A.* 2A :139–1, the receiving stolen goods statute, which "authorized" a conviction without direct proof of the defendant's guilty knowledge, an element of the crime which could be inferred from the fact of recent possession of stolen goods. Although this case concerns an inference of possession of an unlawful weapon from presence in an automobile, much of what was said in *DiRienzo* is relevant here.

With regard to the question of unconstitutional arbitrariness, we said in *DiRienzo, supra,* that a jury may be permitted to draw an inference if it is "more likely than not that the facts proven point to the fact inferred." 53 *N. J.,* at 376. The effect of the holding in *DiRienzo* is that inferences may be drawn from facts, and not from statutes; that on the facts of that case a jury could reasonably infer that the defendant's possession of recently stolen goods was accompanied by his guilty knowledge. A statute which purports to permit an inference of one essential fact from proof of

another can have no probative force independent of the factual context in which it is applied. *Id.; United States v. Gainey,* 380 *U. S.* 63, 85 *S. Ct.* 754, 13 *L. Ed. 2d* 658 (1965); *United States v. Romano,* 382 *U. S.* 136, 86 *S. Ct.* 279, 15 *L. Ed. 2d* 210 (1965).

One aspect of *N. J. S. A.* 2*A*:171–7 in the present case is a legislative reminder to the trial court that the presence of an unlawful weapon in an automobile may often give rise to an inference that the occupants of the car are in possession of the weapon. Of course, whether the inference would be unconstitutionally arbitrary depends upon the facts of each case. And further, in no case could the statute prevent the trial judge from granting a motion for a judgment of acquittal, when on the facts no jury could reasonably convict. *DiRienzo, supra,* at 377–378. For example, in *State v. Lewis,* 93 *N. J. Super.* 212 *(App. Div.* 1966), *certiorari* denied, 386 *U. S.* 986, 87 *S. Ct.* 1297, 18 *L. Ed. 2d* 238 (1967), a gun was found in a jacket on the front seat of a car in which the defendant and six others had been riding; the jacket did not belong to the defendant, who had been sitting in the back seat. The Appellate Division properly reversed the defendant's conviction for possession of the gun, holding that *N. J. S. A.* 2*A*:151–7 was inapplicable where the facts warranted a judgment of acquittal. The court said: "Assuming that [the statute] is constitutional as applied to appropriate facts, we think it would be an unconstitutional construction to hold that under it the mere unexplained presence of a gun concealed in a coat worn by or belonging to one passenger justifies the conviction of another passenger of unlawful possession." 93 *N. J. Super.,* at 214; see also *State v. Blanca,* 100 *N. J. Super.* 241, 249–251 *(App. Div.* 1968).

In the present case, however, it may well be that the gun which was protruding from the cushions of the rear seat was within the zone of Humphreys' knowledge and control. "Possession" does not necessarily mean actual physical possession; it is enough that defendant have "intentional

control and dominion" over the object. *DiRienzo, supra,* at 369; *State v. Labato,* 7 *N. J.* 137, 148–149 (1951). Thus a jury, on the basis of the facts proved, *i. e.,* the positions of Humphreys and the gun in the car, could reasonably infer that he was in possession of the gun.

Despite the fact that an inference of possession would not be arbitrary under the facts of this case, we must reverse and order a new trial on the possession indictment because the trial court's reading of *N. J. S. A.* 2A:151–7 to the jury, by making presence in the car "presumptive evidence" of possession, unfairly relieved the State of part of its traditional burdens of proof and persuasion. It is fundamental that the State must prove all elements of a criminal charge, and it must prove its case beyond a reasonable doubt. The crux of the situation in the case before us rests upon the distinction between a presumption and an inference. A presumption which is mentioned to a jury has a binding effect until successfully rebutted by the defendant. An inference, on the other hand, is merely a standard of "probable reasoning, as to which the court may lay down logical tests for the guidance of the jury, but can impose no binding rule." 1 Wharton, *Criminal Evidence* § 193, *p.* 203 (11*th ed.* 1935). As Justice Francis said for this Court in *State v. Corby,* 28 *N. J.* 106, 114 (1958):

"A presumption is compulsory and *prima facie* establishes the fact to be true; it remains compulsory if it is not disproved. A presumption cannot be disregarded by the jury while an inference may or may not be, depending on the deductions made by the jury from all of the evidence. A presumption has a technical force or weight attached to it and the jury, in the absence of proof overcoming it, must find in accordance with it. An inference carries no such force as a matter of law. The jury is at liberty to find the ultimate fact one way or the other as they may be convinced by the testimony. In the one case, the law draws a conclusion from the evidence; in the other, the jury may draw the conclusion, depending upon how they view the impact of the proof. In short, *a presumption is a mandatory deduction, born as a matter of law, while an inference is a permissive deduction which the reason of the jury may or may not reach without express direction of law.*" (emphasis added).

In *State v. DiRienzo, supra,* this Court upheld a conviction under the receiving stolen goods statute primarily because the trial judge charged that the jury was free to accept or reject the inference of guilty knowledge from possession, based on its evaluation of all the facts in the case. We said:

"The defendant's guilty knowledge is an element of the crime in the present case; thus it must be proved by the State beyond a reasonable doubt. Since we have held that the inference of guilty knowledge is sufficient if it more likely than not comports with common experience, does this reduce the burden of persuasion below a 'reasonable doubt' standard? The crux of the matter is that it would, only if the jury were *compelled* to draw the inference and convict on the basis of possession alone; that is, if the burden of proof of guilty knowledge were taken from the State. * * * But the inference is permissive only. The jury is free to accept or reject the inference, since according to the statute, possession of stolen goods merely 'authorizes' conviction. * * * Thus the burdens of proof and persuasion remain with the State, and the defendant's possession has the effect simply of one circumstance to be considered by the jury in deciding whether the State has proved guilty knowledge beyond a reasonable doubt. This was properly explained by the trial judge in his charge." 53 *N. J.* at 376–377.

Although in the present case the judge included in his charge the traditional language concerning the State's burdens of proof and persuasion, this cannot be held to overcome the prejudice which might have occurred to the defendant when the jury was charged, "The presence of a firearm in a vehicle is *presumptive evidence* of the possession by all persons occupying the vehicle at the time." (emphasis added). The jury must be carefully informed that an inference of one fact from another is never binding; the use of the term "presumptive evidence" could have been misleading in the present case. Here the jury may have interpreted that term as far stronger than a permissive inference. See the discussion by Judge Learned Hand in *United States v. Sherman,* 171 *F. 2d* 619, 624 (*2d Cir.* 1948). Jury instructions employing the term "presumption" instead of describing an inference have been held to be re-

416

versible error, since they shift a burden from the State to the defendant. See *United States v. Allegrucci*, 258 *F.* 2*d* 70, 73–74 (3*d Cir.* 1958); *Barfield v. United States*, 229 *F.* 2*d* 936, 939–940 (5*th Cir.* 1956); *Balman v. United States*, 94 *F.* 2*d* 197, 199 (8*th Cir.* 1938).

The objection to the statute could be framed as well in terms of an unfair limitation on the defendant's right to a jury trial. The "deliberative function of the jury is improperly circumscribed * * * by [its] being told that the presumption springs into existence as a matter of law * * *." *State v. Corby, supra*, 28 *N. J.*, at 115. And further, the validity of a charge to the jury describing the defendant's "presumption" of innocence is undermined by a contrary presumption read to it by the trial judge. *Id.*, at 115–117.

 It is apparent from the foregoing that *N. J. S. A.* 2*A*:151–7, as written and as read to the jury, may have compelled the jury to find that Humphreys possessed the gun as a matter of law, and thus violated his right to due process of law. In no situation should the statute be mentioned to the jury. We therefore remand for a new trial on the weapons charge so that the jury may be properly instructed, uninfluenced by that statute. This of course is not to suggest that any infirmity attaches to the statute which sets forth the substantive offense of carrying an unlawful weapon in an automobile, *N. J. S. A.* 2*A*:151–41. And, of course, on the remand, if the trial judge believes that the facts as revealed at trial so warrant it (*i. e.*, that the inference is more likely than not true), he can inform the members of the jury that they may infer, if they so choose, Humphrey's possession of the gun from his presence in the automobile. The term "possession" should be carefully defined as well, since the mere presence of an individual in a car in which an unlawful weapon is somewhere stored is too broad a standard. *State v. Lewis, supra;* see *DiRienzo, supra*, at 369–70.

 It should be pointed out that, on the remand, there is a wholly independent basis for Humphreys' conviction for possession of an unlawful weapon. There is no ques-

tion that the three codefendants were engaged in concerted criminal activity. When the parties are bent on a joint criminal venture, they are all subject to *N. J. S. A.* 2*A*:85–14, the aiding and abetting statute, for any criminal act which is an incident of the mission. Although it is no doubt true that more than one individual can "possess" an item within the meaning of *N. J. S. A.* 2*A*:151–41, even if one of Humphreys' two codefendants were in exclusive possession of the weapon, concealed on his person or in the automobile, Humphreys would still share criminal responsibility for the possession of the weapon if it could be reasonably inferred that he knew of the existence of the gun and was a knowing participant in the criminal mission. In this case such an inference was clearly warranted since one of the guns was in plain view, and the evidence was overwhelming, as the jury found, that Humphreys and two others were engaged in a criminal mission.

Humphreys' convictions for breaking and entering with intent to steal and for possession of a narcotic drug are affirmed, and his conviction for carrying an unlawful weapon in an automobile is reversed and remanded for a new trial.

*For affirmance in part and reversal and remandment in part*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*Opposed*—None.