NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2099-14T3

STATE OF NEW JERSEY,

       Plaintiff-Respondent,

   v.

ROBERT J. KOSCH, JR.,

       Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **March 1, 2016**
>
> **APPELLATE DIVISION**

Submitted December 8, 2015 — Decided  March 1, 2016

Before Judges Fisher, Rothstadt and Currier.

On appeal from the Superior Court of New Jersey, Law Division, Sussex County, Indictment No. 13-05-0188.

Taylor R. Ward, attorney for appellant.

Fredric M. Knapp, Morris County Prosecutor, attorney for respondent (Paula Jordao, Assistant Prosecutor, on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

At the conclusion of a ten-day trial, defendant was convicted of theft, forgery, and other offenses charged in two separate indictments.  In this appeal, defendant argues, among other things, that the evidence did not support the jury's finding that he committed theft of immovable property, <u>N.J.S.A.</u>

2C:20-3(b). Although there was evidence in the record to demonstrate an unlawful taking of an interest in immovable property, we nevertheless vacate those convictions because the jury was mistakenly instructed as to the nature of the interest allegedly taken.

I

To put the issues in perspective, we briefly summarize the evidence concerning defendant's involvement with three separate properties: 8 Tanglewood Drive, Highland Lakes; 13 Tanglewood Drive, Highland Lakes; and 61 Greenhill Road, Hamburg. Defendant was acquitted of offenses involving a fourth property also located in Highland Lakes; consequently, we need not discuss the evidence relating to those charges.

A

The jury heard evidence from which it could find that Margaret Green (a fictitious name[1]) purchased 8 Tanglewood on May 15, 2008, for $367,000; a mortgage encumbered the property. Facing foreclosure proceedings in 2010, Green moved from the premises and attempted to refinance.

On August 16, 2011, Green was advised by a neighbor that someone was living in her home. Investigation revealed that an

---

[1] The names of the property owners and renters in this opinion are fictitious.

individual named Sam Rose was living in the residence and the locks had been changed.

Green provided police with proof of ownership. It was learned that the leasing of the property to Rose was facilitated by an unrecorded deed which suggested Green transferred the property to John Houle — an alias used by defendant — on June 27, 2011, for $100. The purported grantor's signature was notarized,[2] and the deed stated it was prepared by defendant. Green denied executing this document.

When asked for documentation concerning his right to lease the premises, Rose provided a fax of the Green-Houle deed, a written statement from Green, and a copy of an agreement which suggested Houle (defendant's alias) authorized defendant to act as property manager for 8 Tanglewood. The address for Houle contained in the deed was a non-existent address in Wayne; defendant also used that address to apply for electric service at 8 Tanglewood.

Green sold the property in 2013.

---

[2] The notary testified he met defendant in 2006, when he performed work on defendant's home. He acknowledged notarizing documents for defendant in the past but denied notarizing the deed or anything for defendant in 2011.

The machinations regarding 13 Tanglewood Drive are somewhat different.

Janet Singer purchased the lot at this address for approximately $50,000 and thereafter built a modular home. On July 8, 2011, defendant left a letter in Singer's mailbox expressing an interest in purchasing the home. Following negotiations, defendant agreed to buy the home for $185,000. He provided Singer with an initial deposit of $1000, and she agreed to allow defendant to install utilities for the purpose of obtaining a certificate of occupancy. Defendant provided an additional $7500 in cash toward the purchase of the home.

In October 2011, Singer's suspicions were raised when she received a call from the electric company seeking approval to remove her name from the property's service account. She then learned a family had moved into the premises. Upon investigation, Singer was shown a deed by which she was purported to have transferred the property to defendant on August 18, 2011, for $100. She denied execution of this and all other related documents.

The State also presented evidence that the property was leased to Marie Arthur. When applying for financial assistance from the Department of Community Affairs, Arthur provided a copy

of a lease, which she and defendant had signed, obligating Arthur to pay defendant $1415 per month. A copy of the deed was also provided, but without a second page — the page that would have contained the grantor's signature.

An attorney retained by defendant to represent him with regard to the transfer of 13 Tanglewood testified he was advised there was a signed deed but he claimed he never saw it and was told by Singer's attorney that she never signed a deed. No closing ever occurred.

Singer later sold the property to another for $215,000.

C

Martha Smith purchased a residence located at 61 Greenhill Road in Hamburg in 2006 for $243,800. The property was burdened by a mortgage. Smith encountered financial difficulties, and a tax lien was recorded. In 2010, defendant, who was aware of the lien, advised Smith of his interest in purchasing the property. When they met, defendant explained he had been very successful in buying properties in distress. Smith authorized defendant to negotiate a settlement with the mortgage holder, and she agreed to transfer the property to him for the settlement amount. Defendant's attorney at the time sent Smith a letter of undertaking, which she signed. And Smith signed a deed to be

held in escrow by defendant's real estate attorney until the settlement with the mortgagee was paid off.

After waiting two years, Smith wrote to defendant's then attorney seeking return of the escrowed deed. Unbeknownst to Smith, defendant had leased 61 Greenhill Road to Marianne King in January 2012 for $1100 per month; King testified she believed defendant was the owner of the property. The property was later leased to Sarah Van Wagner at the rate of $1000 per month.

II

After hearing evidence about these and other events, the jury found defendant guilty of: two counts of second-degree, and one count of third-degree, theft of immovable property by unlawful taking or disposition, N.J.S.A. 2C:20-3(b); two counts of third-degree theft of movable property by unlawful taking or disposition, N.J.S.A. 2C:20-3(a); two counts of third-degree forgery, N.J.S.A. 2C:21-1(a)(2); and one count of second-degree trafficking in personal identifying information pertaining to fifty or more separate persons, N.J.S.A. 2C:21-17.3.[3]

Defendant unsuccessfully moved for judgment of acquittal or, in the alternative, for a new trial, and he was later sentenced to an aggregate twenty-year prison term, with a six-

---

[3] This last conviction was based on a charge contained in a separate indictment.

year period of parole ineligibility. Specifically, the judge imposed the following:

> — <u>count one</u>: a fifteen-year prison term, subject to a six-year period of parole ineligibility, for second-degree theft of immovable property (8 Tanglewood);
>
> — <u>count two</u>: five years for third-degree forgery (concerning 8 Tanglewood);
>
> — <u>count six</u>: eight years for second-degree theft of immovable property (61 Greenhill);
>
> — <u>count seven</u>: five years for third-degree theft of movable property (61 Greenhill);
>
> — <u>count eight</u>: five years for third-degree theft of immovable property (13 Tanglewood);
>
> — <u>count nine</u>: five years for third-degree theft of movable property (13 Tanglewood);
>
> — <u>count ten</u>: five years for third-degree forgery (13 Tanglewood); and
>
> — <u>count "eleven"</u>[4]: seven years for second-degree trafficking in items containing personal identifying information.

The judge ordered that the prison terms on counts one, six, eight and eleven — the three immovable property theft convictions and the personal information conviction — run concurrently with each other, and that the other sentences were also to run concurrently with each other, but that the prison

---

[4] This "eleventh" count was actually the tenth count of a separate indictment; that count was tried together with the counts in this indictment. In the jury verdict sheet, it was referred to as count eleven.

terms imposed in the second group were to run consecutively to the prison terms imposed in the first group of convictions.

                                    III

Defendant appeals, arguing:

> I. [THE THEFT OF IMMOVABLE PROPERTY CONVICTIONS] MUST BE DISMISSED BECAUSE THE STATE FAILED TO PRESENT FACTS SUFFICIENT TO CONSTITUTE A 'TRANSFER' OF IMMOVABLE PROPERTY.
>
> > A. The State failed to present evidence that Kosch's actions were sufficient to transfer an interest in immovable property . . . .
> >
> > B. The jury charges were prejudicially insufficient because they failed to define what is a transfer of an interest, and did not explain what the State alleged to be the operative act of each property.
>
> II. [THE THEFT OF IMMOVABLE PROPERTY CHARGES] OF THE INDICTMENT DEPRIVED KOSCH OF DUE PROCESS AND FAIR NOTICE BY FAILING TO INCLUDE THE ESSENTIAL ELEMENTS AND FACTS OF THE CRIMES FOR WHICH HE WAS CONVICTED, AND THEREFORE MUST BE DISMISSED.
>
> III. [THE FORGERY CONVICTIONS] MUST BE DISMISSED BECAUSE THE STATE FAILED TO PRESENT SUFFICIENT EVIDENCE OF FORGERY AS ALLEGED IN THE INDICTMENT, THE COURT FAILED TO PROPERLY CHARGE THE JURY, AND THE JURY VERDICT SHEET WAS MISLEADING.
>
> > A. [The] Forgery Counts . . . of the Indictment must be dismissed, because the State failed to present evidence of the operative

act for which he is alleged to have committed.

B. The Court's failure to include the operative act in the Indictment in the jury charges resulted in prejudicial error and therefore, the [Forgery] Counts must be dismissed.

C. The verdict sheet failed to distinguish a fourth degree forgery and a third degree forgery, and is prejudicial error because it misled the jury from the crime charged.

IV. [N.J.S.A.] 2C:21-17.3(b) IS VAGUE AND IMPERMISSIBLY OVERBROAD, WHICH IS A VIOLATION OF DEFENDANT'S DUE PROCESS UNDER THE NEW JERSEY CONSTITUTION AND UNITED STATES CONSTITUTION.

A. "Personal identifying information" as defined by [N.J.S.A.] 2C:21-17.3(b) and the statutory inference are vague and overbroad as applied and a violation of the Defendant's rights under the New Jersey and United States Constitutions.

B. The State failed to present proof that Kosch possessed accurate personal identifying information pertaining to particular individuals.

V. PROFESSOR LINDA FISHER, THE STATE'S EXPERT WITNESS, HAS NO CRIMINAL EXPERIENCE OR RELEVANT SPECIALIZED KNOWLEDGE, AND THEREFORE, HER QUALIFICATION AS AN EXPERT AND TESTIMONY TO CRIMINAL THEFT MATTERS IS A NET OPINION AND SUBSTANTIALLY PREJUDICIAL, UNHELPFUL TO THE JURY, AND IS PLAIN ERROR.

A. [Professor] Fisher, is categorically unqualified in criminal matters and permitting her opinion testimony as to the criminality of a transfer of real property was severely prejudicial to Kosch.

B. [Professor] Fisher's expert testimony confused and misled the jury because the hypothetical nature of the questions was not sustained, there was extensive commingling of civil and criminal law without corrective instruction, and incorrect legal conclusions were expounded, each substantially prejudicing Kosch, and amounts to plain error.

VI. KOSCH CANNOT BE SENTENCED TO A TERM OF IMPRISONMENT FOR ANYTHING GREATER THAN A DISORDERLY PERSONS OFFENSE BECAUSE THE STATE FAILED TO PRESENT EVIDENCE THAT THE VALUE OF THE INTEREST STOLEN WAS ANY GREATER THAN $1.00.

A. Kosch cannot be convicted for more than a nominal value because the State failed to prove the value of the interest transferred as anything greater than nominal.

B. Jury instructions and the verdict sheet were inadequate with regard to grading of the Theft offenses for the properties in Question.

VII. KOSCH CANNOT BE GUILTY OF THEFT OF MOVABLE PROPERTY AS A MATTER OF LAW BECAUSE THE ALLEGED OWNERS DID NOT HAVE RIGHTFUL CONTROL OF THE PROPERTY AND THEY CONSENTED TO KOSCH'S CONTROL.

VIII. A NEW TRIAL SHOULD BE ORDERED DUE TO CUMULATIVE ERROR.

We find insufficient merit in Points II, III, V, VI, VII and VIII to warrant further discussion in a written opinion. R. 2:11-3(e)(2). For the reasons that follow, we agree the immovable property convictions cannot stand, but we reject defendant's argument that N.J.S.A. 2C:21-17.3(b) is vague and impermissibly overbroad. Consequently, we affirm all convictions except the immovable property convictions, and we remand for a new trial on those counts.

IV

Defendant argues the immovable property convictions cannot stand because of a lack of evidence of an unlawful "transfer" of an interest in immovable property or because the jury charge lacked sufficient clarity as to the interest alleged to have been transferred. Specifically, we consider: (a) the meaning and scope of the governing statute, N.J.S.A. 2C:20-3(b); (b) whether the evidence was sufficient to support the convictions in light of our interpretation of N.J.S.A. 2C:20-3(b); and (c) the impact of our statutory interpretation on the jury's verdict.

A

N.J.S.A. 2C:20-3(b) renders a person "guilty of theft if he unlawfully transfers any interest in immovable property of another with purpose to benefit himself or another not entitled thereto." To understand the statute's reach, we ascertain the

11

Legislature's intent by looking to the meaning of each implicated word and phrase, namely: "immovable property," "any interest," "property of another," and "transfer."

The Criminal Code describes the difference between movable and immovable property by defining the former as "property the location of which can be changed, including things growing on, affixed to, or found in land, and documents, although the rights represented thereby have no physical location," and by defining "immovable property" as "all other property." N.J.S.A. 2C:20-1(e). The word "interest" standing alone is not expressly described, but the Code defines "[i]nterest in property which has been stolen" as "title or right of possession to such property." N.J.S.A. 2C:20-1(o). And "property of another" includes property

> in which any person other than the actor has an interest which the actor is not privileged to infringe, regardless of the fact that the actor also has an interest in the property and regardless of the fact that the other person might be precluded from civil recovery because the property was used in an unlawful transaction or was subject to forfeiture as contraband. Property in possession of the actor shall not be deemed property of another who has only a security interest therein, even if legal title is in the creditor pursuant to a conditional sales contract or other security agreement.
>
> [N.J.S.A. 2C:20-1(h).]

The statute's verb — "transfer" — is not defined by the Code.

Before we consider the proper understanding and scope of the word "transfer," we briefly mention the non-controversial application of the defined terms to the charges in question. First, there is no question that the three properties — 8 Tanglewood, 13 Tanglewood and 61 Greenhill — were immovable within the meaning of N.J.S.A. 2C:20-1(e), because their locations could not be changed. Second, the interests encompassed by N.J.S.A. 2C:20-3(b) are broad in light of the Code's definition of "[i]nterest in property which has been stolen," N.J.S.A. 2C:20-1(o); "interest" would include not just title to the immovable property but also the "right of possession," ibid., or any other right derived from ownership or possession of immovable property.[5] See N.J.S.A. 1:1-2.[6] And, third, there is nothing about the Code's definition of "[p]roperty of another" that would suggest defendant possessed an interest in any of the properties of sufficient stature to preclude conviction under this statute; in other words, there is

_____

[5] There is one limitation on this that we later discuss.

[6] In N.J.S.A. 1:1-2, the Legislature provided definitions for various words and phrases to govern the meaning of statutes "[u]nless it be otherwise expressly provided or there is something in the subject or context repugnant to such construction." Therein, the Legislature defined "property" and "other property" as including "both real and personal property," and also defined "real property" as including "lands, tenements and hereditaments and all rights thereto and interests therein." Ibid.

no question these three properties were owned by others and, although, as the ostensible contract purchaser, defendant may have possessed a partial interest in 13 Tanglewood and 61 Greenhill, he never lawfully acquired the interest he was charged with taking. We, thus, turn to whether a "transfer" occurred within the meaning of N.J.S.A. 2C:20-3(b).

Because the Code does not define "transfer," we first look to N.J.S.A. 1:1-1, which counsels that "[i]n the construction of the laws and statutes of this state, . . . words and phrases shall be read and construed with their context, and shall, unless inconsistent with the manifest intent of the legislature or unless another or different meaning is expressly indicated, be given their generally accepted meaning, according to the approved usage of the language." See State v. Williams, 218 N.J. 576, 586 (2014); Levin v. Twp. of Parsippany-Troy Hills, 82 N.J. 174, 182 (1980); Fahey v. City of Jersey City, 52 N.J. 103, 107 (1968).

One legal dictionary defines "transfer" as the act of "convey[ing] or remov[ing]" something "from one place or one person to another," "to pass or hand over from one to another," and "to change over the possession or control" of something. Black's Law Dictionary 1289 (9th ed. Abridged 2010). Obviously, this is a very broad definition that encompasses actions

inconsistent with a transfer of an interest in immovable property; for instance, one cannot hand over immovable property to another, nor can immovable property be removed from one place to another. N.J.S.A. 1:1-2, however, requires consideration not just of a word's generally accepted meaning but its context as well; consequently, we find it more likely the Legislature intended a consistent but narrower meaning than that contained in dictionaries — that is, a meaning similar to that embodied in the Statute of Frauds, which declares that a "[t]ransfer of an interest in real estate" means "the sale, gift, creation or extinguishment of an interest in real estate." N.J.S.A. 25:1-10. In defining the word "transfer" in N.J.S.A. 2C:20-3(b) in accordance with the Statute of Frauds, which has a certain kinship with N.J.S.A. 2C:20-3(b), we examine the matter at hand and conclude there was evidence from which the jury could find a theft of immovable property.

The evidence in the record supported a finding that each residence was the property "of another" and that defendant's actions were "with purpose to benefit" himself. The legal question to be pondered concerns whether a jury could legitimately find defendant transferred, in the words of the statute, "any interest" in these immovable properties. Ibid. In arguing an absence of proof in this regard, defendant

15

interprets the statute's requirement that the State prove an unlawful transfer of "any interest" as limited to an unlawful transfer of title.[7] He is mistaken.

The statute does not criminalize just the unlawful transfer of title or the entire fee simple of immovable property; it criminalizes the unlawful transfer of "any interest" — an expression that fairly incorporates not only title but lesser interests as well.[8] Accordingly, defendant's argument that the State failed to show he took for his own benefit <u>title</u> to any of

---

[7] In this regard, defendant correctly argues a transfer of title is only complete upon delivery of a deed executed by the grantor, <u>see</u> <u>H.K. v. State</u>, 184 <u>N.J.</u> 367, 382 (2005); <u>Tobar Construction Co. v. R.C.P. Associates</u>, 293 <u>N.J. Super.</u> 409, 413 (App. Div. 1996); <u>In re Estate of Lillis</u>, 123 <u>N.J. Super.</u> 280, 285 (App. Div. 1973), and that an unrecorded deed has limited legal impact, <u>see</u> <u>N.J.S.A.</u> 46:26A-1. But defendant's inability to effectively transfer title to these properties to himself does not mean he was incapable of stealing from the true owner some lesser interest in the property.

[8] In many ways, the argument boils down to the significance of the Legislature's use of the word "any" in the phrase "any interest." The ordinary meaning of "any" is "one, some, or all indiscriminately of whatever quantity." <u>Webster's Third New International Dictionary</u> 97 (1971). If the Legislature intended to criminalize only the unlawful taking of title, it would not likely have said "any interest," which suggests the possibility of multiple interests and not just the single interest of title or fee simple, but would have chosen instead phrases or words such as "the interest," "all interest," or "title." In indefinitely referring to the object of the theft as "any interest," the Legislature expected our courts would view broadly the scope of the proscribed conduct and recognized the potential that an actor could violate the statute by taking less than title or the entire fee simple.

A-2099-14T3

the three properties is irrelevant. We look, instead, at the evidence to determine whether defendant transferred <u>an interest</u> in the property.

The evidence suggests that defendant unlawfully transferred for his own benefit an interest — the right to possession or the right to collect rents or both — in the immovable properties in question. Specifically, the prosecution demonstrated defendant utilized fraudulent or forged documents to falsely manifest to others his ownership of these properties and, in doing so, unlawfully collected rents on the properties. He may not have or was otherwise incapable of actually transferring title of those properties to himself,[9] but, as we have demonstrated, that is not the sole means of violating <u>N.J.S.A.</u> 2C:20-3(b).

---

[9] Considering the elements necessary to consummate a valid transfer of real property, <u>see</u> n. 7, <u>supra</u>, if we were to adopt defendant's proposed interpretation of <u>N.J.S.A.</u> 2C:20-3(b), the statute would have an extraordinarily limited reach. The Criminal Law Revision Commission provides an example: "a trustee, guardian, or other person empowered to dispose of immovable property of others, subjects himself to theft liability if he misappropriates the property in ways that may well be beyond effective relief by civil remedies, i.e., by a transfer . . . being made by the holder of legal title to a person acting in good faith." II <u>Final Report of the New Jersey Criminal Law Revision Commission</u>, comment on § 2C:20-3, at 222 (Oct. 1971). To be sure, this is one way to offend this statute, but there is nothing in either this commentary or the statute's language that would suggest it is the only way, <u>see</u>, <u>e.g.</u>, <u>Territory of Guam v. Gill</u>, 61 <u>F.</u>3d 688 (9th Cir. 1995), <u>cert. denied</u>, 517 <u>U.S.</u> 1167, 116 <u>S. Ct.</u> 1567, 134 <u>L. Ed.</u> 2d 666
(continued)

We lastly consider a category of conduct that may fall outside this statute — the inconsequential taking of possession by a squatter or holdover tenant. This limitation was suggested by the New Jersey Criminal Law Revision Commission's commentary on N.J.S.A. 2C:20-3:

> [M]ere use of or occupation of land should not be classified as theft, even though it be an exercise of unauthorized control with a purpose of permanent appropriation. The immobility and relative indestructibility of real estate make unlawful occupancy a relatively minor harm for which civil remedies, supplemented by mild sanctions for trespassing, should be adequate.
>
> [Final Report of the New Jersey Criminal Law Revision Commission, supra, at 222 (emphasis added).]

It may be inferable that in enacting N.J.S.A. 2C:20-3 the Legislature agreed with these comments. See State v. Garofola, 252 N.J. Super. 356, 359-60 (Law Div. 1988); see also Cannel, New Jersey Criminal Code Annotated, comment 2 on N.J.S.A. 2C:20-3 (2015) (noting that "the framers of this section wanted to bar the criminalization of 'mere use or occupation of land'").

Assuming, without deciding, the Legislature's intention was consistent with the Commission's concerns, we nevertheless decline to interpret N.J.S.A. 2C:20-3(b) as placing beyond its

_____

(continued)
(1996), or that only empowered fiduciaries are capable of committing the offense set forth in N.J.S.A. 2C:20-3(b).

A-2099-14T3

reach all unlawful uses and occupations of immovable property. Although the Legislature may not have intended to criminalize the conduct of squatters and tenants, see Garofola, supra, 252 N.J. Super. at 358; Model Jury Charge (Criminal), Theft of Immovable Property (2011), we see nothing in the statute's plain language to suggest an unlawful exercise of dominion or control over immovable property — coupled with the actor's unlawful leasing of the property to another — cannot be prosecuted under this statute. What occurred here pales in comparison with the type of de minimis conduct that concerned the Commission.

With this understanding of the meaning and scope of N.J.S.A. 2C:20-3(b), we consider the evidence relevant to defendant's three immovable property convictions.

B

As for 8 Tanglewood, through the creation of false documents and the use of an alias, defendant created an appearance of ownership by which he was able to lease the true owner's immovable property to another. For the reasons we have already set forth, we find no merit in defendant's argument, which seems to be based on the lack of an actual transfer of title, that he could not be convicted for having unlawfully taken an interest in this property.

The circumstances concerning 13 Tanglewood are different but the result is the same. There, defendant and the property owner entered into an agreement for defendant's purchase of the property. Defendant, in fact, gave the owner a $1000 deposit and later an additional $7500 toward the $185,000 purchase price, and the owner agreed defendant could install utilities to obtain a certificate of occupancy. Without ever completing the purchase, defendant rented the premises to a third person through use of a fraudulent, unrecorded deed.

To be sure, the evidence demonstrated that both the owner and defendant lawfully possessed an interest in 13 Tanglewood. The true owner held legal title, and defendant obtained an equitable interest as contract purchaser, see Courtney v. Hanson, 3 N.J. 571, 575 (1950); Marioni v. 94 Broadway, Inc., 374 N.J. Super. 588, 612 (App. Div.), certif. denied, 183 N.J. 591 (2005), as well as a limited right to enter the premises prior to closing. Defendant's arguably legitimate acquisition of this limited property interest, however, does not mean the immovable property or the additional interest he was alleged to have unlawfully taken was not the "property of another." See N.J.S.A. 2C:20-1(h). The unlawful acquisition or creation of additional interests in 13 Tanglewood for his own benefit — that do not fall within the arguable limited exception of squatting

or holding over — fell within the ambit of N.J.S.A. 2C:20-3(b). The State presented evidence from which defendant could have been convicted of theft of an interest in 13 Tanglewood.

The evidence concerning 61 Greenhill is also different from the other two situations. There, as we have observed, defendant contracted with its owner, who, as part of the agreement, executed a deed to be held in escrow pending a closing, which was contingent on defendant's negotiation of a satisfactory settlement with the mortgage holder. That contingency was never met and defendant, having somehow obtained in the interim the deed from the escrow agent, leased the property to another. Again, evidence suggested defendant obtained an interest in the property — as ostensible contract purchaser — but he did not obtain a use and occupancy agreement or enter into any other agreement that gave him the right to lease the premises to a third person for his own benefit.[10]

For these reasons, we conclude the State presented evidence of a theft of an interest in 8 Tanglewood, 13 Tanglewood, and 61 Greenhill.

---

[10] Evidence suggested the possibility that defendant, without authority or agreement, removed the deed from escrow; the theft of such a document would not appear to constitute a violation of N.J.S.A. 2C:20-3(b) because the document would constitute movable property. See N.J.S.A. 2C:20-1(e) (defining "movable property" as including "documents, although the rights represented thereby have no physical location").

C

Despite our conclusion that N.J.S.A. 2C:20-3(b) was applicable to the type of thefts suggested by the evidence, we conclude that the three immovable property convictions must be reversed because the jury was not given sufficient guidance.

That is, we agree with defendant that he could not have been convicted on this evidence of unlawfully taking "title" to the properties, but, as we have determined, he could have been convicted of unlawfully taking "an interest" in the properties. The court implicitly asked the jury only to determine whether the former, and not the latter, occurred. This is apparent from the verdicts rendered by the jury. The jury found the value of the immovable property taken exceeded $75,000. But when asked, on the movable theft charges, to evaluate the "rental proceeds rightfully belonging to [Martha Smith]" (the owner of 61 Greenhill) and "rental proceeds rightfully belonging to [Janet Singer]" (the owner of 13 Tanglewood), the jury found those proceeds had a value greater than $500 but less than $75,000. Clearly, in assessing the immovable property charges, the jury believed it was to determine whether defendant unlawfully took something more than the rental proceeds — that he took the immovable property itself. This was a conclusion the evidence could not permit and, therefore, those convictions cannot stand.

22 A-2099-14T3

Contrary to defendant's argument, however, dismissal is not the appropriate remedy. Instead, we vacate the judgment of conviction insofar as it applies to counts one, six, and eight, and we remand for a new trial in conformity with this opinion.

V

Defendant was charged in Indictment No. 13-05-0187 with second-degree distributing, manufacturing or possessing fifty or more items containing personal identifying information pertaining to fifty or more separate persons, without authorization and with knowledge he was facilitating a fraud or injury to be perpetrated by anyone. N.J.S.A. 2C:21-17.3. This one count was tried with the counts, discussed above, that were set forth in Indictment No. 13-05-0188. Defendant argues this statute is unconstitutionally vague and overbroad because "personal identifying information" is not defined and because the inference authorized by N.J.S.A. 2C:21-17.3(c)[11] unconstitutionally eliminates the prosecution's obligation of proving his state of mind. We disagree.

---

[11] This provision states that the "[d]istribution, manufacture or possession of 20 or more items containing personal identifying information pertaining to another person or of items containing personal identifying information pertaining to five or more separate persons without authorization shall create an inference that the items were distributed, manufactured or possessed with knowledge that the actor is facilitating a fraud or injury to be perpetrated by anyone." N.J.S.A. 2C:21-17.3(c) (emphasis added).

The presumption of validity attaches to every statute and informs our review of this provision of the Criminal Code. State v. Muhammad, 145 N.J. 23, 41 (1996). The burden of establishing a statute's unconstitutionality is on the challenger. State v. One 1990 Honda Accord, 154 N.J. 373, 377 (1998). Legislation "will not be ruled void unless its repugnancy to the Constitution is clear beyond a reasonable doubt." Muhammad, supra, 145 N.J. at 41.

When addressing a dual overbroad and vagueness challenge, "a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct," and if it does not, "then the overbreadth challenge must fail." Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494, 102 S. Ct. 1186, 1191, 71 L. Ed. 2d 362, 369 (1982); see also Town Tobacconist v. Kimmelman, 94 N.J. 85, 98 (1983); State v. Badr, 415 N.J. Super. 455, 467-68 (App. Div. 2010). In an overbreadth challenge, the "primary issue is not notice or adequate standards, although these issues may be involved." State v. Lashinsky, 81 N.J. 1, 16 (1979). A statute may be found to be overly broad when it permits "police and other officials to wield unlimited discretionary powers in its enforcement." Ibid. (citation omitted). Defendant argues this statute is unconstitutionally overbroad because it provides

24

officials with power "so broad that the exercise of constitutionally protected conduct depends on their own subjective views as to the propriety of the conduct." <u>Ibid.</u> (citation omitted).

Defendant's contention that <u>N.J.S.A.</u> 2C:21-17.3(c) infringes on constitutionally protected conduct apparently is based on the individual's inalienable right "of acquiring, possessing and protecting property." <u>N.J. Const.</u> art. I, § 1, ¶ 1. In support of this challenge, he argues the statute leads to "absurd results" because, in his view, the term "personal identifying information" is overbroad.

A fair reading of the statute in this light[12] reveals that it does not, as defendant contends, criminalize mere possession of personal identifying information. The statute's terms "fairly read and properly understood" require law enforcement officials to be able to refer to objective facts that would lead a reasonable person to realize possession, manufacture, or distribution of such information, "with knowledge that [he] is

---

[12] "If the person distributes, manufactures or possesses 50 or more items containing personal identifying information pertaining to another person, or ten or more items containing <u>personal identifying information pertaining to five or more separate persons</u>, without authorization, and with knowledge that the actor is facilitating a fraud or injury to be perpetrated by anyone the person is guilty of a crime of the second degree." <u>N.J.S.A.</u> 2C:21-17.3(b)(2) (emphasis added).

facilitating a fraud or injury," constitutes a violation of the statute. N.J.S.A. 2C:21-17.3(b)(2). The additional knowledge requirement ensures that mere possession of property containing information, such as defendant's examples of a telephone book or soccer roster, does not violate the statute. Lashinsky, supra, 81 N.J. at 18.

Consequently, defendant's overbreadth challenge fails because the statute does not restrict constitutionally protected conduct, such as his general right to acquire and possess property, only his right to acquire and possess property with knowledge that he or another will use the property to facilitate injury or fraud. N.J.S.A. 2C:21-17.3(b)(2); Badr, supra, 415 N.J. Super. at 470.

In considering the next aspect of defendant's argument, we observe Hoffman Estates directs that a court should examine

> the facial vagueness challenge and, assuming the enactment implicates no constitutionally protected conduct, should uphold the chal-lenge only if the enactment is impermissibly vague in all of its applications. A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.

A-2099-14T3

> [455 <u>U.S.</u> at 494-95, 102 <u>S. Ct.</u> at 1191, 71
> <u>L. Ed.</u> 2d at 369.[13]]

Defendant contends that ordinary people cannot understand what is prohibited because <u>N.J.S.A.</u> 2C:21-17.3 does not define "personal identifying information." He argues the vagueness doctrine is meant to give "fair warning" to a person that an enactment prohibits that person's conduct, <u>Badr</u>, <u>supra</u>, 415 <u>N.J. Super.</u> at 470, and specifically the concept that laws should give a "person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he [or she] may act accordingly," <u>Hoffman Estates</u>, <u>supra</u>, 455 <u>U.S.</u> at 498, 102 <u>S. Ct.</u> at 1193, 71 <u>L. Ed.</u> 2d at 371; <u>see also</u> <u>State v. Cameron</u>, 100 <u>N.J.</u> 586, 591-93 (1985).

We find no merit in defendant's argument because the phrase "personal identifying information" is defined. <u>N.J.S.A.</u> 2C:20-1 provides that "[i]n chapters 20 and 21, unless a different meaning is plainly required," the phrase "personal identifying information" means

---

[13] When a statute clearly applies to a defendant's conduct, he or she may not successfully challenge it for vagueness. The rationale is evident: "to sustain such a challenge, the complainant must prove that the enactment is vague not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather <u>in the sense that no standard of conduct is specified at all</u>." <u>Hoffman Estates</u>, <u>supra</u>, 455 <u>U.S.</u> at 495 n.7, 102 <u>S. Ct.</u> at 1191 n.7, 71 <u>L. Ed. 2d</u> at 369 n.7 (emphasis added).

> any name, number or other information that may be used, alone or in conjunction with any other information, to identify a specific individual and includes, but is not limited to, the name, address, telephone number, date of birth, social security number, official State issued identification number, employer or taxpayer number, place of employment, employee identification number, demand deposit account number, savings account number, credit card number, mother's maiden name, unique biometric data, such as fingerprint, voice print, retina or iris image or other unique physical representation, or unique electronic identification number, address or routing code of the individual.
>
> [N.J.S.A. 2C:20-1(v).]

Although this definition certainly covers a broad array of information, it does so with sufficient clarity to eviscerate defendant's vagueness challenge. Badr, supra, 415 N.J. Super. at 470. "[N]o one of common intelligence need guess at this statute's meaning." Id. at 472.

Applying the statute to the case, N.J.S.A. 2C:21-17.3 "clearly proscribe[s]" defendant's actions. Hoffman Estates, supra, 455 U.S. at 495, 102 S. Ct. at 1191, 71 L. Ed. 2d at 369. At trial, the State presented evidence that defendant was desirous of contacting owners of distressed properties. To that end, defendant hired an individual who testified he performed 159 skip traces for defendant that included finding a person's new residence and other identifying information, such as birth

dates, social security numbers, associates and relatives. If defendant had trouble locating a person, the skip tracer would provide further information, including the identification of prior litigation, relatives and neighbors. For example, he rendered a report that provided Green's bankruptcy records, date of birth, current residence, and social security number.

At trial, the State called Detective Voris, who testified he retrieved records of the skip traces from defendant's office, demonstrating defendant was aware he was in possession of "50 or more items containing personal identifying information pertaining to another person." N.J.S.A. 2C:21-17.3(b)(2). If defendant contemplated his actions in conjunction with the statute, he would have understood the statute's prohibition. N.J.S.A. 2C:21-17.3; Badr, supra, 415 N.J. Super. at 470. We conclude that N.J.S.A. 2C:21-17.3, as applied to defendant's conduct, was not unconstitutionally vague. Badr, supra, 415 N.J. Super. at 473.

Lastly, turning to defendant's burden of proof argument, the fact that N.J.S.A. 2C:21-17.3(c) permits a jury to infer defendant possessed "20 or more items containing personal identifying information . . . with knowledge that [he] is facilitating a fraud or injury" does not render the statute unconstitutional. State v. Humphreys, 54 N.J. 406, 414 (1969).

Defendant's argument fails because he conflates inferences with presumptions. A "presumption is compulsory and prima facie establishes a fact to be true" unless disproved. Ibid. "An inference carries no such force as a matter of law[;] . . . a presumption is a mandatory deduction, born as a matter of law, while an inference is a permissive deduction which the reason of the jury may or may not reach without express direction of the law." Ibid. (emphasis removed).

The statute in question authorizes an inference based on certain specific facts; it does not compel the jury to draw that inference and convict on the inference alone. State v. DiRienzo, 53 N.J. 360, 376 (1969). Accordingly, the burden of proof remains with the State, and defendant's possession of more than twenty items of personal identifying information only creates a circumstance by which a jury could "decid[e] whether the State has proved guilty knowledge beyond a reasonable doubt." Id. at 376-77; see also Humphreys, supra, 54 N.J. at 414.

VI

To summarize, we conclude defendant is entitled to a new trial on the three immovable property counts. The evidence precludes the jury's consideration of whether the interest defendant is charged with stealing is title to those three properties; instead, the evidence on those counts limits the

question to whether defendant stole a lesser interest — the owner's right to collect rents on those properties. Consequently, we also conclude that once those three counts are finally adjudicated, defendant should be resentenced on all convictions, including those with which we have not intervened. If defendant is convicted on any or all of the immovable property counts at the conclusion of the new trial, the judge should pay particular attention at sentencing to the fact that any convictions on the immovable property counts will likely bear great similarity to the conduct for which defendant was found guilty on the theft of movable property charges; we do not now need to determine, however, whether those convictions should merge for sentencing purposes.

Affirmed in part, reversed in part, and remanded for a new trial and resentencing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2099-14T3